IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EMIL W. POTOCZNY,
                          Plaintiff,

v.                             Civil Action No. 12-1251

AURORA LOAN SERVICES, LLC,
and
AURORA BANK FSB,
and
PHELAN HALLINAN & SCHMIEG, LLP,
                          Defendants.

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, by and through his attorney, David E. Pearson, Esquire, submits this memorandum of law in support of his motion for summary judgment, as to the liability of Defendants Aurora Loan Services, LLC ("Aurora"), and Phelan Hallinan & Schmieg, LLP ("PH&S").

**I.    PRELIMINARY STATEMENT**

This action, commenced on March 12, 2012, stems from actions taken by Defendants to collect from Plaintiff a debt that they claimed was owed to Aurora. (See Compl. & Exs. A-J.) Plaintiff alleged that PH&S thereby violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p (FDCPA) (see Compl. ¶¶ 11-41), and Aurora violated the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. §§ 2270.1-2270.6 (FCEUA) (see id ¶¶ 42-45), and Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3 (UTPCPL) (see id ¶¶ 46, 55-66), and breached its contract with Plaintiff (see id ¶¶ 47-54). Specifically, because, Plaintiff alleges, Aurora did not own the debt and was not beneficially interested in it (id. ¶¶ 23-31), Defendants used false, deceptive, and/or misleading representations and/or means in connection with the collection of a debt, in violation of FDCPA, 15 U.S.C. § 1692e (id. ¶ 32), and FCEUA,

1

73 P.S. § 2270.4(b)(5) (id. ¶ 45). Furthermore, by attempting to collect an amount not expressly authorized by any agreement creating the debt or permitted by law, they violated FDCPA, 15 U.S.C. § 1692f(1) (id. ¶ 34), and FCEUA, 73 P.S. § 2270.4(b)(6)(i) (id. ¶ 45).

## II. STATEMENT OF FACTS

On November 23, 2011, PH&S, on behalf of Aurora, began prosecuting an action in the Court of Common Pleas of Delaware County, Pennsylvania, seeking to foreclosure on a mortgage on Plaintiff's home. (Compl. ¶¶ 13, 20-21 & Exs. B, D, E; Aurora Answer ¶¶ 13, 19-21; PH&S Answer ¶¶ 13, 19-21.) Defendants claimed that the mortgage had been assigned to Aurora by Mortgage Electronic Registration Systems, Incorporated ("MERS") as Nominee for Home Loan Center, Inc., d/b/a LendingTree Loans, pursuant to an assignment of mortgage. (Compl. ¶ 22 & Exs. D ¶ 3, F; Aurora Answer ¶ 22; PH&S Answer ¶ 22.) The assignment was signed, on behalf of MERS, by an employee of Aurora, the assignee itself. (Compl. ¶ 26 & Ex. F; Aurora Answer ¶ 26.)

The lender here was Home Loan Center, Inc., d/b/a LendingTree Loans. (Compl. ¶¶ 12, 19 & Exs. A at 1, B at 1; Aurora Answer ¶¶ 12, 19; PH&S Answer ¶¶ 12, 19.) The loan obligation was later purchased by Lehman Brothers Bank, FSB. (Ex. 1.) The promissory note evidencing the loan obligation was indorsed by the original lender to Lehman Brothers Bank, FSB. (See Ex. 2.) The note was then indorsed by Lehman Brothers Bank, FSB, to Lehman Brothers Holdings Inc. and, in turn, by Lehman Brothers Holdings Inc., all indorsements being undated. (See Ex. 3.) This purchase and these indorsements to and from the Lehman Brothers entities were performed in the course of a securitization transaction. (See Ex. 4 at 5 ¶ 12 , 8 ¶ 3, 13 ¶ 1(b).) On November 22, 2006, the servicing of the loan was transferred by Home Loan Center, Inc., d/b/a LendingTree Loans, to Aurora. (Ex. 7.) In order to discover whether Aurora

2

owned the loan and was beneficially interested in the matter, Plaintiff served on PH&S, on behalf of Aurora, written discovery requests (Ex. 5) and a notice of deposition (Ex. 8). Aurora refused to be deposed (see Ex. 9) and, instead, filed a motion to quash the notice of deposition and for a protective order (Exs. 9-10), contending that the notice was overbroad (Ex. 10 at 7 ¶ 7, 10 ¶ 22(a), 13, 15) and that Plaintiff should be required "to specify the scope of the intended deposition" (id. at 11 ¶ 25, 15-16). Defendants maintain that the debt was owing to Aurora. (Aurora Answer ¶ 33; PH&S Answer ¶ 33.)

Pursuant to the mortgage, the lender could waive Plaintiff's obligation to pay funds for any or all escrow items at any time. (Compl. ¶ 48 & Ex. B ¶ 3; Aurora Answer ¶ 48.) The lender, in fact, did waive any such escrow obligation. (Compl. ¶ 49 & Ex. H; Aurora Answer ¶ 49.) In or about November 2009, Aurora began to demand that Plaintiff pay it escrow funds (Compl. ¶ 50 & Ex. I; Aurora Answer ¶ 50.) This demand increased Plaintiff's monthly payment from $716.41 to $1,416.19. (Compl. ¶ 52 & Ex. J; Aurora Answer ¶ 52.) Aurora continued to demand escrow funds and the resulting interest and late charges (Compl. ¶ 54; see Aurora Answer ¶ 54), until the alleged default (see, e.g., Ex. 11 at 76-88). Plaintiff made payments to Aurora, in response to its demands that he pay it. (Compl. ¶ 33; Aurora Answer ¶ 33.) Plaintiff also sustained, as a result of Defendants' actions, loss of business (Ex. 11 at 100), rental income (id. at 97-99), mental anguish and emotional distress (e.g., id. at 95, 121-23), and attorney's fees and costs to defend the foreclosure (e.g., id. at 101-03).

### III. ARGUMENT

Summary judgment shall be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a) (2013). In making this determination, the court must consider the evidence in the record in the light most

favorable to the nonmoving party.  E.g., Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 369 (3d Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A fact is material if it could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.  E.g., Roth v. Norfalco LLC, 651 F.3d 367, 373 (3d Cir. 2011).

This Court's scheduling order, of October 11, 2012, directed that any dispositive motion, together with supporting brief, be filed no later than January 15, 2013.  Therefore, the instant motion is timely.  Because there is no genuine dispute as to any material fact, Plaintiff is entitled to judgment as a matter of law.

### A. Aurora was not the proper plaintiff to foreclose.

In Pennsylvania courts, all actions shall be prosecuted by and in the name of the real party in interest.  E.g., Am. Home Mortg. Servicing, Inc. v. Tarantine, 2011 Pa. Dist. & Cnty. Dec. LEXIS 108, at *7 (C.P. Allegheny June 13, 2011) (citing Pa.R.C.P. 2002(a)); cf., e.g., Bank of N.Y. v. Raftogianis, 13 A.3d 435, 451 (N.J. Super. 2010) (citing permissive nature of N.J. rule: "Every action may be prosecuted in the name of the real party in interest.").  Rule 2002 was enacted to simplify proceedings by banning legal fictions, technicalities, and the hiding of the real party in interest behind the legal plaintiff.  E.g., Craig by Boosel v. Farren, 700 A.2d 543, 545 (Pa.Super. 1997).  The dictates of Rule 2002 are mandatory.  Hallstrom Dev. Co. v. Lee, 450 A.2d 655, 658 (Pa.Super. 1982) (citing 4 Anderson's Civil Practice § 2002.1, p. 21).  This is true even though mortgage foreclosure proceedings are in rem or, as in Pennsylvania, de terris.  Tarantine, 2011 Pa. Dist. & Cnty. Dec. LEXIS 108, at **7-8.[1]  For this reason, a plaintiff that is unable to prove it owns the promissory note has no standing to proceed with an action in

---

[1] In rem entails determining ownership of a thing, while de terris means imposing a judgment against the land.  E.g., Irv Ackelsberg, Residential Mortgage Foreclosure: Pennsylvania Law & Practice § 3.1 & n.2 (2012) (citing In re Dangler, 75 B.R. 931, 935 (Bankr. E.D. Pa. 1987); Meco Realty Co. v. Burns, 200 A.2d 869, 871 (Pa. 1964)).

4

mortgage foreclosure. E.g., Tarantine, 2011 Pa. Dist. & Cnty. Dec. LEXIS 108, at **7-17 (citing, inter alia, Deutsche Bank Nat'l Trust Co. v. Steele, 2008 U.S. Dist. LEXIS 4937, at *5 (S.D. Ohio Jan. 8, 2008) (foreclosure plaintiff must offer evidence from which finder of fact could conclude by preponderance that it owned both note and mortgage when complaint filed); Raftogianis, 13 A.3d at 451-60 (requiring ownership of both note and mortgage as of filing date of foreclosure complaint)). The issue in Tarantine was the foreclosure plaintiff's "lack of ownership of the Note, since it is a default under the Note that triggers the right to foreclose on the Mortgage." 2011 Pa. Dist. & Cnty. Dec. LEXIS 108, at *15; id. at *17 (concluding that foreclosure plaintiff "has no clue" who owns note). As here, the foreclosure plaintiff in Tarantine was apparently a mortgage servicing company. Id. at *1 & n.1.

The loan at issue here, though originally payable to Home Loan Center, Inc., d/b/a LendingTree Loans (Compl. ¶¶ 12, 19 & Exs. A at 1, B at 1; Aurora Answer ¶¶ 12, 19; PH&S Answer ¶¶ 12, 19), was securitized (see Ex. 4 at 5 ¶ 12 , 8 ¶ 3, 13 ¶ 1(b)). In a securitization,

> one or more lenders will sell substantial numbers of mortgage loans they have issued to a pool or trust. Interests in that pool or trust are then sold to individual investors, who receive certificates entitling them to share in the funds received as the underlying loans are repaid. That can occur without any notice to the debtors/mortgagors who remain obligated on the original notes. Other entities, generally called "servicers" are retained to administer the under-lying loans. Those servicers or additional "subservicers" will be responsible for collecting and distributing the funds which are due from the debtors/mortgagors.

Raftogianis, 13 A.3d at 441. Here, as a result of the securitization, the investor became Wells Fargo, as trustee, while Aurora became the servicer (e.g., Ex. 7). (Ex. 5 Ex.[2]) Now, in the case of a securitized mortgage, the foreclosure complaint is properly filed in the name of the

---

[2] This document was the result of a MERS® ServicerID - Investor inquiry for this loan. (See Ex. 5 Ex.) In essence, MERS is a private corporation which administers a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. E.g., Raftogianis, 13 A.3d at 440; see also, e.g., In re Thomas, 447 B.R. 402, 412 (Bankr. D. Mass. 2011) (MERS merely registry system that tracks beneficial ownership and servicing of mortgages but is never holder of note).

5

securitization trust that owns the pool of mortgages within which the delinquent loan resides. E.g., Irv Ackelsberg, Residential Mortgage Foreclosure: Pennsylvania Law & Practice § 7.2 (2012). When a servicer initiates a foreclosure in its own name, it may even be guilty of a misdemeanor. E.g., id. (citing 18 Pa.C.S. § 7311).

### (1) Thereby, PH&S violated FDCPA.

Now, because Aurora was not the proper plaintiff, PH&S's actions to the contrary constituted a false representation of the legal status of a debt and a false representation or deceptive means to attempt to collect a debt, including threatening to take and taking action that could not legally be taken, in violation of FDCPA, 15 U.S.C. § 1692e. See, e.g., Wallace v. Wash. Mut. Bank, F.A., 683 F.3d 323, 327 (6th Cir. 2012) (citing Hepsen v. J.C. Christensen and Assocs., Inc., Civ. A. No. 07-1935, 2009 U.S. Dist. LEXIS 92717, at **14-15 (M.D. Fla. Sept. 22, 2009); Blarek v. Encore Receivable Mgmt., Inc., Civ. A. No. 06-0420, 2007 U.S. Dist. LEXIS 22549, at **43-50 (E.D. Wis. Mar. 27, 2007)) (holding that false representation of creditor's name—where foreclosure plaintiff had not acquired ownership of note and mortgage—may constitute "false representation . . . to collect or attempt to collect any debt" under FDCPA, 15 U.S.C. § 1692e); Matmanivong v. Unifund CCR Partners, Civ. A. No. 08-6415, 2009 U.S. Dist. LEXIS 36287, at **14-16 (N.D. Ill. Apr. 28, 2009) (holding that suing on debt not properly transferred to plaintiff violated FDCPA, 15 U.S.C. § 1692e).

Because FDCPA is a remedial statute, its language should be construed broadly, so as to effect its purpose. E.g., Allen v. LaSalle Bank, N.A., 629 F.3d 364, 367 (3d Cir. 2011) (citing Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006) (providing background and purpose of FDCPA)) ("Section 1692e proscribes 'any false, deceptive or misleading representation.'"). Accordingly, in considering claims under FDCPA, communications from collectors to debtors

6

should be analyzed from the perspective of the "least sophisticated debtor." E.g., Rosenau v. Unifund Corp., 539 F. 3d 218, 221 (3d Cir. 2008). The basic purpose of this standard is to ensure that FDCPA protects all consumers, the gullible as well as the shrewd. E.g., id. The analysis of the least sophisticated debtor standard focuses on the level of sophistication, rather than whether the purported debtor actually owes the debt claimed. E.g., Brown, 464 F.3d at 453 n.1. That it may be obvious to specialists or the particularly sophisticated that a given statement is false or inaccurate does nothing to diminish that statement's power to deceive others less experienced. Id. at 453 (citing Fed. Trade Comm'n v. Standard Educ. Soc'y, 302 U.S. 112, 116 (1937) ("Laws are made to protect the trusting as well as the suspicious.")); see Rosenau, 539 F. 3d at 221 (applying least sophisticated debtor standard to collection letter from "Legal Department"); Brown, 464 F.3d at 454 (applying least sophisticated debtor standard to collection letter threatening legal action). Here, the least sophisticated debtor would have, no doubt, taken PH&S's representations at face value.

FDCPA is a strict liability statute, where all violations are assessed from the perspective of the "objective least sophisticated consumer." E.g., Farren v. RJM Acquisition Funding, LLC, Civ. A. No. 04-995, 2005 U.S. Dist. LEXIS 15230, at *15 (E.D. Pa. July 29, 2005) (Pratter, J.) (citing Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991)). FDCPA imposes liability without proof of an intentional violation. E.g., Allen, 629 F.3d at 368 (citing 15 U.S.C. § 1692k). Therefore, a plaintiff may prove a claim, for instance, under § 1692e(2)(A) merely by showing that a defendant debt collector misstated a material fact regarding the character, amount, or legal status of any debt in connection with the collection of that debt without even averring any intent or awareness on the part of the defendant. Yentin v. Michaels, Louis & Assocs., Civ. A. No. 11-0088, 2011 U.S. Dist. LEXIS 104711, at *51 (E.D. Pa. Sept. 15, 2011) (Dalzell, J.).

### (a) PH&S is a debt collector for purposes of FDCPA.

A "debt collector" under FDCPA includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." E.g., Glover v. FDIC, 698 F.3d 139, 152 (3d Cir. 2012) (quoting 15 U.S.C. § 1692a(6)). Furthermore, attorneys that regularly, through litigation, try to collect consumer debts are considered debt collectors under FDCPA. E.g., Glover, 698 F.3d at 152 (citing Heintz v. Jenkins, 514 U.S. 291, 292 (1995); FTC v. Check Investors, Inc., 502 F.3d 159, 172 n.11 (3d Cir. 2007)) (holding, "without hesitation," that because foreclosure law firm self-identified as "debt collector" and confirmed that foreclosure complaint was "an attempt to collect a debt" and complaint alleged that it engaged in such litigation as common debt collection practice, defendant was debt collector under FDCPA).

In this case, PH&S has argued vigorously and at length to recharacterize its November 22, 2011 letter (Compl. Ex. C) as a "validation notice" that it sent to Plaintiff in order to comply with debt collector requirements of FDCPA, 15 U.S.C. § 1692g (validation of debts) ("[A] debt collector shall . . . send the consumer a written notice . . . ."). (See PH&S Answer ¶ 14; Mem. Supp. Mot. to Dismiss at 2-3 & n.1, 4-9 & Ex. A; Reply Br. at 2-10.) PH&S's January 19, 2012 letter (Compl. Ex. G) confirmed that its practice was to represent lenders in Pennsylvania and New Jersey in foreclosure litigation (see id.). (See also Compl. Ex. C ("Phelan Hallinan & Schmieg, LLP is a debt collector attempting to collect a debt."); id. Ex. G ("Please be advised that this firm is a debt collector attempting to collect a debt.").) PH&S cannot deny that it is a debt collector under FDCPA.

Excluded from the definition of "debt collector," however, are those who collect or attempt to collect a debt which was not in default at the time it was obtained. E.g., Portley v. Litton Loan Servicing LP, Civ. A. No. 08-2799, 2010 U.S. Dist. LEXIS 32981, at **9-10 (E.D. Pa. April 5, 2010) (Tucker, J.) (citing 15 U.S.C. § 1692a(6) (F)(iii); Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403-04 (3d Cir. 2000) (holding assignee to be debt collector because debt in default at time of assignment)) (finding defendant to be debt collector because debt in default when obtained for servicing). Here, PH&S admitted that it was retained by Aurora "solely" to represent it in a foreclosure action. (PH&S Answer ¶ 38.) Therefore, the debt must have already been in default and subject to foreclosure when PH&S obtained it for collection.

### (b) Foreclosure is debt collection for purposes of FDCPA.

Mortgage foreclosure is debt collection under FDCPA. Glazer v. Chase Home Fin. LLC, No. 10-3416, 2013 U.S. App. LEXIS 845, at **14-29 (6th Cir. Jan. 14, 2013) ("[W]e hold that mortgage foreclosure is debt collection under the Act. Lawyers who meet the general definition of a 'debt collector' must comply with the FDCPA when engaged in mortgage foreclosure."); see also, e.g., Glover, 698 F.3d at 152 & n.8 (foreclosure complaint was attempt to collect debt); Reese v. Ellis, Painter, Raterree & Adams LLP, 678 F.3d 1211, 1218 (11th Cir. 2012) ("A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest."); Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373 (4th Cir. 2006) (citing Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 234 (3d Cir. 2005) ("The fact that the [Pennsylvania Municipal Claims and Tax Liens Act] provided a lien to secure the Pipers' debt does not change its character as a debt or turn PLA's communications to the Pipers into something other than an effort to collect that debt."); Romea v. Heiberger & Assocs., 163 F.3d 111, 116 (2d Cir. 1998) (concluding that eviction notice required by statute was attempt to collect debt);

9

Shapiro & Meinhold v. Zartman, 823 P.2d 120, 124 (Colo. 1992) ("[A] foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt.")) ("Wilson's 'debt' remained a 'debt' even after foreclosure proceedings commenced.").

### (c) PH&S has no defense to FDCPA.

FDCPA is a federal law; accordingly, state law defenses are irrelevant. Hamid v. Stock & Grimes, LLP, Civ. A. No. 11-2349, 2012 U.S. Dist. LEXIS 94441, at *4 (E.D. Pa. July 9, 2012) (Bartle, J.) (citing, inter alia, Allen, 629 F.3d at 369) (rejecting voluntary payment defense); see, e.g., Allen, 629 F.3d at 369 ("[T]he FDCPA does not contain an exemption from liability for common law privileges. Common law immunities cannot trump the FDCPA's clear application to the litigating activities of attorneys."). FDCPA does provide for three affirmative defenses: bona fide error, 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."), statute of limitations, 15 U.S.C. § 1692k(d), and good faith compliance with an FTC advisory opinion, 15 U.S.C. § 1692k(d). Of these, PH&S attempted to plead only the bona fide error defense. (See PH&S Affirmative Defenses.) However, PH&S failed to provide even a single fact in support. (See, e.g., id. 6th Affirmative Defense.) And, as will be demonstrated, PH&S's stated position precludes its use of the bona fide error defense.

The bona fide error defense is an affirmative defense, on which the debt collector bears the burden of proof. E.g., Slanina v. United Recovery Sys., LP, Civ. A. No. 11-1391, 2011 U.S. Dist. LEXIS 121356, at *7 (M.D. Pa. Oct. 20, 2011) (citing Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002, 1006 (9th Cir. 2008)). Thus, to avail itself of the defense, a defendant must show: (1) that its FDCPA violations were unintentional; (2) that these violations resulted from a

bona fide error; and (3) that the bona fide error occurred despite the defendant's maintenance of procedures reasonably designed to avoid such errors. E.g., id. (citing Beck v. Maximus, Inc., 457 F.3d 291, 297-98 (3d Cir. 2006)). The debt collector has an affirmative statutory obligation, under FDCPA, to maintain procedures reasonably adapted to avoid readily discoverable errors. Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1276-77 (11th Cir. 2011) (citing, inter alia, 15 U.S.C. § 1692e(2)(A) (prohibiting false representation of "the character, amount, or legal status of any debt")). A debt collector does not fulfill this affirmative obligation by delegating it entirely to the creditor. Id. at 1277 (citing 15 U.S.C. § 1692k(a) (subjecting debt collector to civil liability for FDCPA violation)). The bona fide error defense does not protect a debt collector whose reliance on a creditor's representation was unreasonable. E.g., McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948-49 (9th Cir. 2011) (reliance reasonable only if based on procedures maintained to avoid violation; unwarranted reliance on client is not such a procedure). A debt collector's mistaken interpretation of FDCPA is not a bona fide error. E.g., Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S. Ct. 1605, 1611-25 (U.S. 2010).

Rather, the bona fide error defense applies only to clerical errors. E.g., Maxwell v. Fairbanks Capital Corp. (In re Maxwell), 281 B.R. 101, 119 (Bankr. D. Mass. 2002) (citing Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1034 (6th Cir. 1992); Baker v. G.C. Services Corp., 677 F.2d 775, 779 (9th Cir. 1982)). Even if the bona fide error defense might also apply to factual errors (see PH&S Mem. Opp. Mot. J. Pleadings at 10 (citing Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S. Ct. 1605, 1617 n.12 (U.S. 2010))), PH&S has failed to identify a single factual error (see, e.g., PH&S Answer & Affirmative Defenses; Mem. Opp. Mot. J. Pleadings). A claim of bona fide error is tantamount to a claim of mistake, and,

therefore, the FDCPA defendant must plead this defense with the particularity required by Federal Rule of Civil Procedure 9(b). E.g., Wiebe v. Zakheim & Lavrar, P.A., Civ. A. No. 12-1200, 2012 U.S. Dist. LEXIS 156894, at *6 (M.D. Fla. Nov. 1, 2012) (citing Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.")); Konewko v. Dickler, Kahn, Sloikowski & Savell, Ltd., Civ. A. No. 07-5338, 2008 U.S. Dist. LEXIS 40685, at *2 (N.D. Ill. May 14, 2008) (citing Fed. R. Civ. P. 9(b)) ("[T]he [] factual details of an alleged mistake—for example, who made the mistake and when and how it occurred—must be set out with 'particularity' in the pleading."). This generally means alleging "the who, what, when, where and how: the first paragraph of any newspaper story." E.g., Wiebe, 2012 U.S. Dist. LEXIS 156894, at *6 (quoting Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1078 (7th Cir. 1997)); Konewko, 2008 U.S. Dist. LEXIS 40685, at *2 (same). The only blunders, therefore, manifest in this case are not factual or clerical, but legal ones, which cannot be excused as bona fide error. See, e.g., Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1272 (11th Cir. 2011) (citing Jerman, 130 S. Ct. at 1614) ("The Supreme Court contrasted these procedures [which qualify for the FDCPA bona fide error defense] with procedures maintained to avoid mistakes in legal reasoning, which is not a mechanical or strictly linear process."); id. at 1275 ("If debt collectors could meet their bona fide error defense burden by [validating the debt under FDCPA, 15 U.S.C. § 1692g(b)], the third element of § 1692k(c) would be mere surplusage. Such an interpretation would allow debt collectors to violate some provisions of the FDCPA so long as they complied with the rest of the Act, a result clearly at odds with Congress's intent."). Here, PH&S insists that it made no error and was correct in its sending of the letters (see PH&S Answer ¶¶ 14, 35) and filing of the papers (see id. ¶ 20), because,

it insists, Aurora was and is the proper creditor (see id. ¶ 33). Therefore, its purported bona fide error defense must fail as a matter of law.

**(2) Thereby, Aurora violated FCEUA and UTPCPL.**

Aurora was a person to whom a debt was alleged to be owed. (E.g., Compl. ¶¶ 14-15, 20-22, 29, 33, 35 & Exs. C-G; Aurora Answer ¶¶ 14-15, 20-22, 29, 33, 35; PH&S Answer ¶¶ 14-15, 20-22, 29, 33, 35.) Therefore, it was a creditor for purposes of FCEUA. E.g., Morilus v. Countrywide Home Loans, Inc., Civ. A. No. 07-0900, 2007 U.S. Dist. LEXIS 44943, at *14 (E.D. Pa. June 20, 2007) (Stengel, J.) (citing 73 P.S. § 2270.3). As such, based on the law and facts recited above, Aurora violated FCEUA, 73 P.S. § 2270.4(b)(5), by using false, deceptive, and/or misleading representations and/or means in connection with the collection of a debt, § 2270.4(b)(5)(ii) by falsely representing the character, amount, and/or legal status of a debt, § 2270.4(b)(5)(v) by taking an action that could not legally be taken, and § 2270.4(b)(5)(x) by using a false representation or deceptive means to attempt to collect a debt.

Now, a violation of FCEUA automatically constitutes a violation of UTPCPL. E.g., Dicesari v. Asset Acceptance LLC, Civ. A. No. 11-2223, 2012 U.S. Dist. LEXIS 133168, at **12-13 (E.D. Pa. Sept. 18, 2012) (Joyner, C.J.) (citing 73 P.S. § 2270.5(a) ("If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of . . . the Unfair Trade Practices and Consumer Protection Law."); Richburg v. Palisades Collection LLC, 247 F.R.D. 457, 466 (E.D. Pa. 2008) (Dalzell, J.) ("Furthermore, the letter establishes UTPCPL liability because a violation of the FCEUA is also a violation of the UTPCPL.")). And although this Court granted PH&S's motion to dismiss the UTPCPL claim against it "because the complaint does not allege any justifiable reliance on the letters," justifiable reliance is not required in order to establish a UTPCPL violation derivative of

an FCEUA violation pursuant to 73 P.S. § 2270.5(a). See, e.g., Dicesari, 2012 U.S. Dist. LEXIS 133168, at **12-13. Regardless, Plaintiff was clearly justified in relying on Defendants' representations with regard to, inter alia, the need to defend the foreclosure action against him. (See, e.g., Ex. 11 at 121-23.)

### B. Defendants demanded unauthorized escrow charges.

A debt collector may not use unfair or unconscionable means to collect or attempt to collect a debt by attempting to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. E.g., Allen, 629 F.3d at 367 & n.4 (citing 15 U.S.C. § 1692f(1)). Likewise, a creditor may not attempt to collect any amount, including any interest, fee, charge, or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law. E.g., Mergliano v. MGC Mortg., Inc., Civ. A. No. 11-2223, 2011 U.S. Dist. LEXIS 124148, at *9 n.24 (Rufe, J.) (citing 73 P.S. § 2270.4(b)(6)(i)).

Here, pursuant to the mortgage, "Lender may waive Borrower's obligation to pay Lender Funds for any or all Escrow Items at any time." (Compl. ¶ 48 & Ex. B ¶ 3; Aurora Answer ¶ 48.) The lender, in fact, did waive any such escrow obligation. (Compl. ¶ 49 & Ex. H; Aurora Answer ¶ 49.) In November 2009, Aurora began to demand that Plaintiff pay it escrow funds (Compl. ¶ 50 & Ex. I; Aurora Answer ¶ 50), despite the fact that Plaintiff's request to modify his loan under the Home Affordable Modification Program was denied, to the extent that might have been relevant (Compl. ¶ 51; Aurora Answer ¶ 51). Aurora's demand for escrow increased Plaintiff's monthly payment from $716.41 to $1,416.19 (Compl. ¶ 52 & Ex. J; Aurora Answer ¶ 52) and led to the alleged default (see, e.g., Ex. 11 at 76-88). Defendants continued to demand

these funds, and then interest and late charges thereon. (Compl. ¶ 54; see Aurora Answer ¶ 54.) Defendants' claims and Plaintiff's payments, therefore, included interest, fees, and charges, including but not limited to escrow charges, that were not expressly authorized by the agreement creating the debt or permitted by law, in violation of FDCPA, 15 U.S.C. § 1692f(1), and FCEUA, 73 P.S. § 2270.4(b)(6)(i), and, by extension, UTPCPL, see, e.g., Dicesari, 2012 U.S. Dist. LEXIS 133168, at **12-13, respectively.

## IV. CONCLUSION

Because there are no material issues of fact as to Defendants' liability, Plaintiff is entitled to judgment against them as a matter of law. Therefore, his motion for summary judgment should be granted.

Respectfully submitted,

s/ David E. Pearson

David E. Pearson, Esquire
6983 Weatham Street
Philadelphia, PA 19119
E-mail: DavidEP137@aol.com
Telephone: (215) 849-1750
Facsimile: (215) 849-1830
Attorney for Plaintiff

Dated: January 12, 2013