IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMIL W. POTOCZNY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AURORA LOAN SERVICES, LLC, | : | |
| et al. | : | NO. 12-1251 |

MEMORANDUM

McLaughlin, J.                                          July 22, 2014

        This action arises from a mortgage foreclosure

proceeding filed in state court by defendant Aurora Loan

Services, LLC ("ALS"), against the plaintiff, Emil Potoczny,

with regard to Potoczny's property in Darby, Pennsylvania.

Potoczny brings claims against ALS, ALS's parent company Aurora

Bank FSB (collectively, "Aurora"), and Aurora's counsel, Phelan

Hallinan & Schmieg, LLP ("PHS") for violations of the federal

Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p

("FDCPA") (Count I), Pennsylvania's Fair Credit Extension

Uniformity Act, 73 P.S. §§ 2270.1-2270.6 ("FCEUA") (Count II),

and Pennsylvania's Unfair Trade Practices and Consumer

Protection Law, 73 P.S. §§ 201-1 to 201-9.3 ("UTPCPL") (Count

IV), and for breach of contract (Count III).

        The plaintiff has moved for summary judgment as to

Aurora and PHS on his claims under the FDCPA, the FCEUA, and the

UTPCPL (Doc. No. 21).  PHS and the Aurora defendants have filed

separate cross-motions for summary judgment on all claims (Doc.

Nos. 34 & 35).  The Court will deny the plaintiff's motion for summary judgment, and will grant the defendants' motions.

I.   <u>Factual & Procedural Background</u>[1]

    A.   <u>Note & Mortgage</u>

On November 11, 2006, Potoczny entered into a promissory note (the "Note") in which he agreed to repay a $100,000 loan to a lender identified as "Home Loan Center, Inc., dba LendingTree Loans" ("LendingTree").  Compl., Ex. A, ¶ 1. The Note provides that the lender may transfer the Note, and that "[t]he Lender or anyone who takes this Note by transfer and who is entitled to receive payments under the Note is called the 'Note Holder'."  <u>Id.</u>  "In addition to the protections given to the Note Holder under th[e] Note, a Mortgage . . . protects the Note Holder from possible losses . . . ."  <u>Id.</u>, ¶ 10.

The Note is secured by a mortgage which grants a security interest to LendingTree on Potoczny's property located at 1308 Main Street, in Darby, Pennsylvania (the "Mortgage"). Compl., Ex. B.  The Mortgage "secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under th[e] [Mortgage] and

---

[1]  The facts set forth in this section are undisputed unless otherwise noted.

the Note." Id. at 3.  The lender under the Mortgage is again
identified as "Home Loan Center, Inc. dba LendingTree Loans."
Id. at 1.  The Mortgage expressly states that Mortgage
Electronic Registration Systems, Inc. ("MERS"), acting as a
nominee for the Lender and its successors and assigns, is the
mortgagee under the security instrument. Id. at 1, 3.  Under the
Mortgage, "MERS (as nominee for Lender and Lender's successors
and assigns) has the right to exercise any or all of [the]
interests [granted by the Borrower], including, but not limited
to, the right to foreclose and sell the Property, and to take
any action required of Lender . . . ." Id. at 3.

     The Mortgage provided that Potoczny would pay a sum to
cover "escrow items," which include, among other things,
insurance premiums and property taxes. Id. at 4.  By written
waiver, the lender might the borrower's obligation to pay for
escrow items, id. at 5; however, the "Lender may revoke the
waiver as to any or all Escrow Items at any time by a notice
given in accordance with Section 15 [of the Mortgage] and, upon
such revocation, Borrower shall pay to Lender all Funds, and in
such amounts, that are then required . . . ." Id. Potoczny
asserts that LendingTree did, in fact, waive the escrow
requirement.  As evidence of that waiver, he has produced a copy
of an escrow waiver dated November 11, 2006, which contains a

3

signature block for "Emil W. Potoczny," but is signed by neither party.  Compl., Ex. H.

On November 22, 2006, LendingTree informed Potoczny by letter that servicing of his mortgage loan was being transferred to Aurora Loan Services, LLC ("ALS").  Declaration of Helen Placente, Ex. E (Doc. Nos. 34-4 & 35-5).

At some point between November 2006 and December 2010, the Note was endorsed by Kathy Henry, Assistant Secretary for LendingTree, over to Lehman Brothers Bank, FSB.  Rick W. Skogg, on behalf of Lehman FSB, subsequently endorsed the Note over to Lehman Brothers Holdings Inc.  Lehman Brothers Holdings, through its authorized signatory Paul E. Sveen, then endorsed the Note in blank.  Placente Decl., Exs. B & C.  The endorsements are not dated.  The document tracking system used by ALS and Aurora Bank reflects that ALS received the Potoczny loan collateral file, containing original documents associated with the loan, on December 20, 2010, and imaged the endorsed-in-blank Note into its electronic database on January 4, 2011.  Placente Decl. ¶¶ 12-13 & Ex. A.[2]  By assignment of mortgage dated February 2,

_____

[2]  The collateral file containing the Note remained in ALS's possession until June 21, 2011, when loan servicing activities were transferred to Aurora Bank.  Placente Decl. ¶ 3.  Servicing was further transferred to Nationstar Mortgage LLC ("Nationstar") on or about June 28, 2012.  Id. ¶ 4.

2011, the Mortgage was assigned to ALS by MERS, as nominee for

LendingTree.  Placente Decl. ¶ 25 & Ex. I.[3]


      B.   <u>Home Affordable Modification Trial Plan</u>

        In 2009, Potoczny sought a loan modification agreement

from Aurora.  As the first step in this process, Potoczny signed

a Home Affordable Modification Trial Period Plan ("Trial Plan")

on October 27, 2009.  Placente Decl., Ex. F.  ALS was listed as

the "Lender or Servicer" under the Trial Plan.  The Trial Plan

required Potoczny to make payments of $837.27 on November 1,

2009, December 1, 2009, and January 1, 2010, "which include[d]

payment for Escrow Items, including real estate taxes, insurance

premiums and other fees."  <u>Id.</u>, § 2.

        The Trial Plan was executed only by Potoczny.  The

Plan provided that, if the Lender did not return a fully

executed copy of the Plan and the Modification Agreement prior

to the Modification Effective Date, the loan documents would not

be modified and the Trial Plan would terminate.  <u>Id.</u>, § 2(F).

In that event, "the Lender will have all of the rights and

remedies provided by the Loan Documents."  <u>Id.</u>  Under § 4(C) of

the Trial Plan, Potoczny also agreed that, "[i]f Lender may

---

      [3]  According to the complaint in the state foreclosure
action, the assignment of mortgage to ALS was recorded in
Delaware County on April 6, 2011.  Compl., Ex. D.

establish an escrow account under applicable law, this Plan
constitutes notice that the Lender's waiver as to payment of
Escrow Items, if any, has been revoked, and I have been advised
of the amount needed to fund my escrow account, and I agree to
the establishment of an escrow account."  Ultimately, Aurora
declined to execute the Trial Plan, and Potoczny's loan was not
modified.

    C.   <u>Default & Foreclosure</u>

      Under the Note, Potoczny was to make a monthly payment
of $716.41, due on the first day of each month, starting January
1, 2007.  Compl., Ex. B, ¶ 3.  If he did not pay the full amount
of each monthly payment by its due date, he would be in default.
<u>Id.</u>, ¶ 6(B).  From approximately December 1, 2006, to October 5,
2009, Potoczny made monthly payments of $716.41 to ALS.
Placente Decl., Ex. G (Customer Account Activity Statement, Mar.
31, 2012).  From October 30, 2009, to April 30, 2010, he made
payments of approximately $837.37.  <u>Id.</u>  After June 1, 2010,
Potoczny made monthly payments of approximately $717.00.  <u>Id.</u>
The last of these payments was recorded on December 6, 2010.
<u>Id.</u>[4]

---

    [4]  Potoczny has testified that he tried to make further
payments after this date, but his payments were refused by
Aurora.  Potoczny Dep. 76-79, 82, Nov. 27, 2012 (Doc. No. 21-
12).

By July 20, 2011, Potoczny owed a principal balance of $96,549.29 under the Mortgage.  Compl., Ex. C.  ALS retained the defendant law firm PHS to initiate foreclosure proceedings.  On November 22, 2011, PHS sent Potoczny a letter, which read, in relevant part:[5]

> The amount of debt as of 7/20/11 is as follows:
>
> | | |
> |---|---|
> | Principle Balance | $ 96,549.20 |
> | Interest | $  9,119.20 |
> | 05/01/2010 through 07/20/2011 | |
> | Late Charges | $    214.92 |
> | Escrow Deficit | $  8,795.18 |
> | Subtotal | $114,678.59 |
> | | |
> | Suspense Credit | ($1,286.94) |
> | TOTAL | $113,391.65 |
>
> .  .  .  .
>
> Your original creditor was MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS A NOMINEE FOR HOME LOAN CENTER INC DBA LENDINGTREE LOANS .  .  .  . The mortgagee of record is AURORA LOAN SERVICES, LLC.  They are your creditor.  Your Mortgage Servicing Company is AURORA BANK FSB.[6]

---

[5] This type of letter is known as a validation notice. Pursuant to 15 U.S.C. § 1692g, within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector must send the consumer a written notice containing: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer disputes the validity of the debt within thirty days, the debt will be assumed to be valid by the debt collector; (4) the process for verification of the debt, if timely disputed; and (5) the process for contacting the original creditor.  15 U.S.C. § 1692g(a).

[6] The letter also contained the required language stating the deadline to dispute the validity of the debt, describing the

Compl., Ex. C.

On November 23, 2011, Aurora commenced a foreclosure action against Potoczny in the Pennsylvania Court of Common Pleas for Delaware County.  Compl., Ex. D.  On January 19, 2012, PHS sent a letter to Potoczny's attorney, which stated that the firm had received Potoczny's responsive pleading in the foreclosure action, and that PHS was following up "to inquire about your client's intentions for curing the arrearages." Compl., Ex. G.  The letter further stated that, if Potoczny was "interested in alternatives to foreclosure and/or curing the default," his attorney should contact PHS with a settlement proposal.  Finally, the letter advised that, until settlement was reached, PHS did not have the authority to hold off on the foreclosure proceedings.  Id.

---

verification process, and setting forth the process to contact the original creditor. Potoczny apparently did not dispute the debt.  Potoczny Dep. 48-49.

Pursuant to 15 U.S.C. § 1692g(a)(3), a debt collector is entitled to assume that the debt is valid if undisputed within 30 days; however, the failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.  15 U.S.C. § 1692g(c).  Nor is a debtor required to dispute the debt before filing suit under § 1692e.  See McLaughlin v. Phelan Hallinan & Schmieg, LLP, --- F.3d ---, 2014 WL 2883891, at *4-5 (3d Cir. 2014).

D.   Procedural History

On March 12, 2012, Potoczny filed his complaint in
this Court.   PHS moved to dismiss the complaint in its entirety.
The Court granted PHS's motion to dismiss as to Counts II, III,
and IV; accordingly, the only claim remaining against PHS is the
plaintiff's claim under the Fair Debt Collection Practices Act
(Count I).   Aurora did not move to dismiss, electing instead to
answer and proceed to discovery.

Before the close of discovery, Potoczny moved for
judgment on the pleadings as to liability against PHS on the
FDCPA claim.   The Court denied that motion, holding that PHS had
established a genuine dispute as to whether the November 2011
and January 2012 letters constituted activities in connection
with the collection of a debt.

A month after filing the instant motion for summary
judgment, but before the defendants filed their responses in
opposition and cross-motions, the plaintiff sought to amend his
pleadings to add Nationstar as a defendant, to add additional
claims under the FDCPA and FCEUA, and to add new factual
allegations regarding the securitization of his loan, to bolster
his argument that Aurora was not the proper plaintiff in the
state foreclosure proceeding.   The Court denied leave to amend,
holding that the proposed amendments would be futile, and that

9

the parties would be subject to undue prejudice if the Court permitted the filing of an amended complaint after the conclusion of discovery and the filing of several dispositive motions.[7]

II.   Threshold Issues

    A.   Record Documents

       In his response to the defendants' cross-motions, Potoczny argues that, pursuant to Federal Rule of Civil Procedure 37, the Declaration of Aurora Bank Vice President Helen Placente and attached exhibits should be stricken because the documents were not listed and Ms. Placente was not specifically identified in the defendants' initial disclosures under Federal Rule of Civil Procedure 26(a)(1).

       The plaintiff does not dispute, however, that he sought no discovery from the defendants in this action during the six-month discovery period leading up to summary judgment.[8]  The

---

     [7]   Accordingly, the Court will not consider claims asserted by the plaintiff for the first time in his motion for summary judgment, such as his claim that the defendants violated 15 U.S.C. § 1692e(5) by taking or threatening to take any action that cannot legally be taken.

     [8]   In his motion for summary judgment, Potoczny refers to a discovery dispute in the underlying state foreclosure action which hindered his ability to obtain documents or depositions in that action, but this dispute has no bearing on the discovery available to him in this federal action.  He did not move to compel any discovery in this action.

plaintiff cannot now rely on his failure to request documents or depose witnesses in seeking to strike the evidence offered by the defendants.

Aurora's Rule 26(a) disclosures stated that "[d]esignated representative(s) of the Aurora Defendants" and "[d]esignated representative(s) of [PHS]" were likely to have information relating to the litigation, and that "[t]he Aurora Defendants' designated representatives would testify regarding Plaintiff's escrow account and as to standing to foreclose." Doc. No. 41-1. Aurora's initial disclosures also listed, "[c]orrespondence between and among Plaintiff, the Aurora Defendants and co-defendants; Documents evidencing Plaintiff's mortgage loan; [and] Pleadings filed in the Delaware County foreclosure action . . . . maintained in electronic form." PHS's initial disclosures listed a "designee of" PHS as a potential witness, and "[t]he foreclosure file" among the documents which PHS might use to support its defenses. Doc. No. 41-2.

The plaintiff concedes that the Note (Ex. C), Mortgage (Ex. D), and Assignment (Ex. I) may evidence his mortgage loan, and that the Notices of Servicing Transfer (Exs. E & H) could be construed as correspondence, but argues that the remaining exhibits do not fall within any category described in the initial disclosures. The Court does not agree.

11

Ms. Placente is a designated representative of the Aurora
defendants, and her statement under Rule 52(c) addresses
Aurora's document maintenance procedures, and the history and
status of the plaintiff's loan as it relates to the defendants.
These topics are well within the range of issues the plaintiff
might have been expected to examine at the deposition of a
defendant's corporate designee, and relate directly to Aurora's
"standing to foreclose."

The plaintiff does not challenge the authenticity of any
document on which the defendants rely.  The disputed documents
include a screen-shot of the "location history" for the
collateral file associated with Potoczny's loan (Ex. A), an
image of the three Note endorsements (Ex. B), Potoczny's
Customer Account Activity Statement (Ex. G), and the Home
Affordable Modification Trial Period Plan (Ex. F) signed by
Potoczny himself on October 27, 2009.  These are documents
evidencing the history and status of Potoczny's mortgage loan as
it relates to the defendants.  Moreover, the Trial Plan was
produced as an exhibit and discussed during the plaintiff's own
deposition in this action.  Potoczny Dep. 114-15.  The Court
will not strike Ms. Placente's declaration or its attached
exhibits.

In support of his own motion for summary judgment, the plaintiff relies on Nationstar's discovery responses and filings in the underlying foreclosure action (Doc. Nos. 21-4, 21-7, 21-11), as well as a 2007 Trust Agreement between ALS and Wells Fargo Bank (Doc. No. 41-3), a 2007 Servicing Agreement between Lehman Brothers Holdings, Inc. (Doc. No. 41-4), and a 2007 Mortgage Loan Sale and Assignment Agreement between Lehman Brothers and Structured Asset Securities Corporation (Doc. No. 41-5) which he alleges evidence the "securitization" of his mortgage, and its ownership by entities other than Aurora.

As noted above, the Court denied the plaintiff leave to amend his complaint to add Nationwide as a defendant or to add new factual allegations regarding the "securitization" of his mortgage.  The plaintiff may not attempt to skirt the Court's order denying leave to amend by introducing new factual allegations or legal claims in his motion for summary judgment.

Because Nationstar is not a party to this action, and because the claims in the original complaint are not based on the defendants' actions after the initiation of the foreclosure action, Nationwide's discovery responses in the foreclosure action are not relevant to the Court's consideration of the instant motions.  Because the Court denied the plaintiff's motion for leave to amend his complaint to include factual

13

allegations regarding the securitization of his mortgage, and because the parties did not conduct discovery related to those allegations, the 2007 Trust Agreement, Servicing Agreement, and Mortgage Sale and Assignment Agreement are also not relevant to the plaintiff's existing claims and allegations.

B.   <u>Injunctive Relief</u>

The Anti-Injunction Act, 28 U.S.C. § 2283, prohibits a federal court from enjoining state court proceedings except in limited circumstances.  The parties have not briefed this issue in this action;[9] nevertheless, because the Court is constrained by the Act from granting a prohibited form of relief, the Court will address the issue here, sua sponte.

Under the Act, a federal district court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  The Act bars any federal court action that has the effect of staying a pending state court proceeding, unless the action falls within one of the Act's three limited exceptions.  <u>Vendo Co. v. Lektro-Vend Corp.</u>, 433

---

[9]   The defendants have, however, raised the issue in their motions to dismiss the complaint in <u>Potoczny v. Nationstar Mortgage LLC</u>, No. 13-3848, which is also pending before this Court.

U.S. 623, 630 (1977); In re Prudential Ins. Co. of Am. Sales Practices Litig., 314 F.3d 99, 103 (3d Cir. 2002).  None of these exceptions is applicable here.

Nor may a plaintiff avoid the Act's prohibition by seeking to enjoin the defendants rather than the state court itself, as Potoczny has done here.  Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 287 (1970) ("It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding.").

Many courts, including district courts within the Third Circuit, have declined to enjoin state court foreclosure proceedings under the Act.  See, e.g., Phillips v. Charles Schreiner Bank, 894 F.2d 127, 132 (5th Cir. 1990) (holding that the possibility of inconsistent judgments is insufficient to invoke the 'aid of jurisdiction' exception, to justify enjoining concurrent state foreclosure action).  See also Mason v. Bank of Am., No. 13-3966, 2013 WL 5574439, at *7 (E.D. Pa. Oct. 10, 2013); Valle v. Etemad, No. 04-969, 2005 WL 579813, at *1 (E.D. Pa. March 11, 2005); Smith v. Litton Loan Servicing, LP, No. 04-2846, 2005 WL 289927, at *8 (E.D. Pa. Feb.4, 2005) Clark v. U.S. Bank Nat'l Ass'n, No. 03-5452, 2004 WL 1380166, at *3 (E.D. Pa. June 18, 2004).

15

The Court finds that the plaintiff's request for relief in the form of "an order enjoining the Defendants, during the pendency of this action and permanently thereafter, from prosecuting or maintaining said foreclosure proceedings," is barred by the Act.  Accordingly, to the extent the plaintiff seeks such injunctive relief, his claims are dismissed.

III. <u>Analysis</u>[10]

Potoczny now moves for summary judgment as to PHS and the Aurora defendants on his federal claims under the FDCPA

---

[10]  A party is entitled to summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine dispute of material fact, which may be satisfied by demonstrating that the party who will bear the burden of proof at trial has failed to make a showing sufficient to establish the existence of an element essential to that party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  A fact is "material" if it might affect the outcome of the suit under the governing law, and "genuine" if a reasonable jury could find for the nonmoving party based on the evidence presented on that issue. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In making its determination, the Court must consider the evidence in a light most favorable to the nonmoving party. <u>Sheridan v. NGK Metals Corp.</u>, 609 F.3d 239, 251 n.12 (3d Cir. 2010).  However, a plaintiff cannot defeat summary judgment by resting on the allegations in his pleadings, but must present evidence from which a jury could find in his favor. <u>Id.</u> (citing <u>Ridgewood Bd. of Educ. v. N.E. ex. rel. M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999)).

(Count I), and against Aurora on his claims under Pennsylvania's FCEUA (Count II), and UTPCPL (Count IV).[11]

The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Conduct in violation of § 1692e includes the false representation of "the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . . ." 15 U.S.C. § 1692e(10).

Potoczny argues that, "by suing on a debt that the foreclosure plaintiff did not own, and by continuing to represent that [Potoczny] owed such a debt to Aurora," PHS and Aurora have used false, deceptive, or misleading representations or means in connection with the collection of a debt, in violation of FDCPA sections 1692e(2)(A) and 1692e(10).[12] He also contends that "by suing on a debt that Aurora did not own" PHS

_____

[11] He does not move for summary judgment on his claim against Aurora for breach of contract (Count III).

[12] In his motion for summary judgment, Potoczny also asserts that PHS has violated 15 U.S.C. § 1692e(5), and ALS has violated 73 P.S. § 2270.4(b)(5)(v), by threatening to take and taking an action that could not legally be taken; however, because Potoczny did not bring claims under these statutory sections in his original complaint, and because the Court denied leave to amend his complaint, the Court will not consider these claims.

misrepresented the character and/or legal status of his debt in
its November 2011 and January 2012 letters, and in filing the
foreclosure complaint.

The FDCPA also prohibits a debt collector from using
unfair or unconscionable means to collect or attempt to collect
any debt, including "[t]he collection of any amount (including
any interest, fee, charge, or expense incidental to the
principal obligation) unless such amount is expressly authorized
by the agreement creating the debt or permitted by law."  15
U.S.C. § 1692f(1).  Potoczny claims that PHS and Aurora violated
section 1692f(1) by attempting to collect escrow fees from
Potoczny after November 2009.

With regard to his claims against Aurora under
Pennsylvania's FCEUA, Potoczny asserts that Aurora violated 73
P.S. § 2270.4(a), because any violation of the FDCPA by a debt
collector constitutes an unfair or deceptive debt collection act
or practice under the FCEUA.  In addition, to the extent that
the Court might consider Aurora a creditor, rather than a debt
collector, he argues that Aurora violated § 2270.4(b)(5)(ii), by
falsely representing the character, amount or legal status of a
debt; § 2270.4(b)(5)(x), by using false or deceptive means to
attempt to collect a debt; and § 2270.4(b)(6)(1), by attempting

to collect an amount not expressly authorized by any agreement creating the debt or permitted by law.

Finally, Potoczny moves for summary judgment on his UTPCPL claims against Aurora, because "a violation of FCEUA automatically constitutes a violation of UTPCPL."  Pl's Mem. in Supp. Mot. Summ. J. at 13.[13]

PHS and the Aurora defendants have filed separate responses in opposition and cross-motions for summary judgment on all claims.[14]

A.   <u>Fair Debt Collection Practices Act</u>

First, the Aurora defendants argue that they are not "debt collectors" subject to the FDCPA.[15]  15 U.S.C. § 1692a provides in pertinent part that:

---

[13]   Potoczny does not move for summary judgment on his UTPCPL claims based on any other argument, nor does he oppose Aurora's cross-motion for summary judgment on the UTPCPL claims on any basis other that his contention that an FCEUA violation is also a violation of the UTPCPL.  Accordingly, Potoczny has waived any claims under the UTPCPL that are not derivative of his FCEUA claims.

[14]   Because Potoczny does not move for summary judgment on his breach of contract claim (Count III), and has failed to respond to Aurora's cross-motion for summary judgment to the extent it sought dismissal of that claim, Potoczny has waived the breach of contract claim, and Count III is dismissed.

[15]   PHS does not argue that it is not a debt collector subject to the FDCPA, but does argue that its January 2012 letter to Potoczny's attorney inquiring about Potoczny's "intentions for curing the arrearages," and suggesting

      (6) The term "debt collector" means any person
who uses any instrumentality of interstate commerce or
the mails in any business the principal purpose of
which is the collection of any debts, or who regularly
collects or attempts to collect, directly or
indirectly, debts owed or due or asserted to be owed
or due another. . . . The term does not include--
    . . . .
      (B) any person while acting as a debt collector
for another person, both of whom are related by common
ownership or affiliated by corporate control, if the
person acting as a debt collector does so only for
persons to whom it is so related or affiliated and if
the principal business of such person is not the
collection of debts;
    . . . .
      (F) any person collecting or attempting to
collect any debt owed or due or asserted to be owed or
due another to the extent such activity . . . (iii)
concerns a debt which was not in default at the time
it was obtained by such person . . . .

      The strictures of the FDCPA apply only to debt

collectors, not creditors.  Police v. Nat'l Tax Funding, L.P.,

225 F.3d 379, 403 (3d Cir. 2000).[16]  The Third Circuit has held

---

alternatives to foreclosure, including settlement, does not
constitute "debt collection activity" under the FDCPA.  However,
the Third Circuit recently has held that "a communication need
not contain an explicit demand for payment to constitute debt
collection activity."  McLaughlin, 2014 WL 2883891, at *3.  See
also Simon v. FIA Card Servs., 732 F.3d 259, 266-67 (3d Cir.
2013) (holding that a letter and notice discussing foreclosure
alternatives, including settlement, were an attempt to collect a
debt within the meaning of the FDCPA).

[16]  Pennsylvania's FCEUA, by contrast, applies substantially
the same statutory language to both debt collectors and
creditors.  See 73 P.S. § 2270.4(a) ("It shall constitute an
unfair or deceptive debt collection act or practice under this
act if a debt collector violates any of the provisions of the
[FDCPA].");  73 P.S. § 2270.4(b) ("With respect to debt
collection activities of creditors in this Commonwealth, it

that an assignee of an obligation is not a debt collector if the obligation is not in default at the time of the assignment, but an assignee may be deemed a debt collector if the obligation is in default when it is assigned.  <u>Id.</u>[17]

The complaint does not allege, and the defendants have not clarified, precisely when Potoczny defaulted on his loan. Under the terms of the Note, he could be considered to have been "in default" as early as January 1, 2011, because he did not submit payment by the first of that month.  ALS became Potoczny's mortgage servicing company in November 2006, more than four years before his last loan payment.  ALS has also produced evidence showing that it was in possession of the Note as of December 20, 2010, but the mortgage itself was not assigned to ALS until February 2, 2011.  Nonetheless, because the Court finds that Potoczny has failed to establish his claims

_____

shall constitute an unfair or deceptive debt collection act or practice under this act if a creditor violates any of the following provisions . . . .").

[17]  A number of courts have also held that a mortgage servicing company is exempt from liability under the FDCPA if the mortgage was not in default at the time it began servicing the loan.  <u>See, e.g.</u>, <u>Beals v. Bank of Am.</u>, No. 10-5427, 2011 WL 5415174, at *18 (D.N.J. Nov. 4, 2011); <u>Conklin v. Purcell, Krug & Haller</u>, No. 05-1726, 2007 WL 404047, at *5 (M.D. Pa. Feb. 1, 2007) (collecting cases, including <u>Sponougle v. First Union Mortgage Corp.</u>, 40 F. App'x 715, 717 n.2 (3d Cir. 2002), supporting the conclusion that mortgage servicing companies are not debt collectors under the FDCPA if they acquire the debt before default).

under the FDCPA or the FCEUA, the Court need not decide whether the Aurora defendants are debt collectors.

    1.   <u>Section 1692e</u>

    Potoczny argues that "by suing on a debt that the foreclosure plaintiff did not own, and by continuing to represent that [Potoczny] owed such a debt to Aurora," PHS and Aurora have used false, deceptive, or misleading representations or means in connection with the collection of a debt, in violation of sections 1692e(2)(A) and 1692e(10) of the FDCPA. He also contends that "by suing on a debt that Aurora did not own" PHS misrepresented the character and/or legal status of his debt in its November 2011 and January 2012 letters, and in filing the foreclosure complaint.

    In his complaint, Potoczny asserts that the February 2, 2011 assignment of mortgage to ALS has no legal significance because MERS was not able to assign the mortgage.  But the Mortgage itself expressly states that Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as a nominee for the Lender and its successors and assigns, is the mortgagee under the security instrument.  Compl., Ex. B at 1.  Under the Mortgage, "MERS (as nominee for Lender and Lender's assigns) has the right to exercise any or all of [the] interests [granted by

Borrower], including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender . . . ." Id. at 3.

The assignment of mortgage states that MERS, "hereby assigns unto the above-named Assignee, the said Mortgage . . . and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's beneficial interest under the Security Instrument." Placente Decl., Ex. I. MERS's powers and interests under the Mortgage include the right to foreclose on the property.

Potoczny also asserts that the assignment is invalid because Jan Walsh, the person who executed the assignment on behalf of MERS, was never vice president of MERS, Compl. ¶ 25, but was in fact an employee of Aurora at all relevant times. Compl. ¶ 26. Aurora denies that Jan Walsh was never the vice president of MERS, but admits that Walsh was an employee of Aurora. Aurora Answer ¶¶ 25-26. Other than this discrepancy, Potoczny has pointed to nothing in the record that suggests the assignment from MERS to ALS was invalid.

Furthermore, whether there was a defect in the assignment of the mortgage to ALS is immaterial to ALS's standing to seek foreclosure as the holder or possessor of the

23

Note.  Potoczny argues that, because ALS was not the mortgagee and had no "beneficial interest" in the mortgage loan, ALS was neither his true creditor nor the proper party in interest entitled to file the foreclosure complaint.  The Court does not agree.  In addition to the February 2011 assignment of mortgage, the defendants have adduced evidence that ALS received the endorsed-in-blank Note no later than January 4, 2011, and was therefore entitled to the rights and protections guaranteed to the Note Holder under the Note and Mortgage.

Although the Pennsylvania Supreme Court has not yet addressed this issue head on, both the Pennsylvania Superior Court and the Bankruptcy Court for the Eastern District of Pennsylvania have held that a note securing a mortgage is a negotiable instrument under Pennsylvania's Uniform Commercial Code ("PUCC"), enforceable by its possessor, regardless of doubts about the chain of possession or the status of the possessor as a "holder" of the note under the UCC.  J.P. Morgan Chase Bank v. Murray, 63 A.3d 1258, 1263-66 (Pa. Super. Ct. 2013) (collecting cases in other jurisdictions holding that a note is a negotiable instrument subject to the UCC, holding that the same is true in Pennsylvania, and concluding that a plaintiff's challenges to the chain of possession by which a possessor came to hold a note are immaterial to its

24

enforceability); <u>In re Walker</u>, 466 B.R. 271, 282, 285-86 (Bankr. E.D. Pa. 2012) (holding that a note is a negotiable instrument under the PUCC, and that, "[i]f a borrower cannot demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment, the borrower lacks standing to raise the issue").[18] <u>See also</u> <u>Jobe v. Wells Fargo Bank</u>, No. 10-1710, 2014 WL 271654, at *4-5 (M.D. Pa. Jan. 23, 2014) (holding that the requirements of a pooling and servicing agreement regarding the assignment of notes placed in a trust are immaterial to a bank's ability to enforce a note, where the bank was in possession of the original note, which was endorsed in blank).

Section 3104 of the PUCC defines a negotiable instrument as follows:

> . . . "[N]egotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
> (2) is payable on demand or at a definite time; and

---

[18] Because any payments made to the holder of the note will discharge a debtor's liability under the note, the debtor cannot be harmed by paying the holder, even if the holder failed to comply with certain transfer requirements. <u>In re Walker</u>, 466 B.R. at 285-86. Accordingly, because the debtor is "unaffected by any noncompliance" by the holder, the debtor "lacks standing to contest the validity of the assignment." <u>Id.</u>

(3) does not state any other undertaking or
instruction by the person promising or ordering
payment to do any act in addition to the payment
of money, but the promise or order may contain:
(i) an undertaking or power to give, maintain or
protect collateral to secure payment;
(ii) an authorization or power to the holder to
confess judgment or realize on or dispose of
collateral; or
(iii) a waiver of the benefit of any law intended
for the advantage or protection of an obligor.

13 Pa. C.S. § 3104.

A note is "payable to bearer if it: (1) states that it
is payable to bearer or to the order of bearer or otherwise
indicates that the person in possession of the promise or order
is entitled to payment; (2) does not state a payee; or (3)
states that it is payable to or to the order of cash or
otherwise indicates that it is not payable to an identified
person." 13 Pa. C.S. § 3109(a).

A "'[p]erson entitled to enforce' an instrument means:
(1) the holder of the instrument; [or] (2) a nonholder in
possession of the instrument who has the rights of a holder . .
. ." 13 Pa. C.S. § 3301.  Here, the Note expressly states that
the Lender may transfer the Note, and that anyone who takes the
Note by transfer is the Note Holder, who is entitled to receive
payments under the Note, which is secured by the Mortgage on
Potoczny's property.

Furthermore, "[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."  13 Pa. C.S. § 3301.  In Murray, the Superior Court noted that, "[f]urther reinforcing the right of a possessor of a note to enforce it, at least one court has held that one need not be a "holder" as defined by the UCC to enforce a note in its possession, notwithstanding doubts regarding how it came to be transferred to the possessor."  Murray, 63 A.3d at 1266 (citing Bank of N.Y. v. Raftogianis, 13 A.3d 435 (N.J. Super. Ct. Ch. Div. 2010)).[19]

The defendants have offered ample evidence that ALS was in possession of the endorsed-in-blank note many months before the foreclosure complaint was filed in state court.[20] Although Potoczny disputes ALS's "ownership" of the mortgage or interest in the loan, and contends that ALS is merely a

---

[19]  Ultimately, the Superior Court in Murray held that, although alleged defects in the chain of assignments to the purported mortgagee did not affect the mortgagee's right to enforce the note, the mortgagor had raised issues of material fact as to whether the mortgagee was in possession of the note itself.  There is no such issue here.

[20]  "If an indorsement is made by the holder of an instrument and it is not a special indorsement [payable to an identified person], it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."  13 Pa. C.S. § 3205(b).

"custodian" of the Note, he does not dispute that ALS was in possession of the Note at the time foreclosure proceedings were initiated.  The Court is persuaded by the reasoning in <u>In re Walker</u> and <u>JP Morgan Chase Bank v. Murray</u> that the Note is a negotiable instrument under the PUCC, and that Aurora, as the possessor of the Note, was entitled to enforce it.

### 2.   Section 1692f(1)

Potoczny claims that PHS and Aurora violated 15 U.S.C. § 1692f(1), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," by attempting to collect escrow fees from Potoczny.

As explained above, Potoczny has introduced evidence that LendingTree waived his escrow payments in November 2006. Nevertheless, the Mortgage also provided that the lender might revoke the escrow waiver at any time by written notice.  The Home Affordable Modification Trial Period Plan executed by Potoczny on October 27, 2009, expressly provides that "this Plan constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised

28

of the amount needed to fund my escrow account, and I agree to the establishment of an escrow account."

Potoczny argues that the Trial Plan is not binding because it was signed by only one party.  In this instance, however, it is immaterial whether the Trial Plan was ever fully executed.  Although the Plan language states that Potoczny "agree[s]" that the Plan constitutes notice that the escrow waiver has been revoked, the Mortgage itself does not require any such agreement on the part of the borrower.  Written notice of revocation, mailed by first class mail or delivered to the borrower's notice address, is sufficient under Section 15 of the Mortgage.  Here, there is no evidence in the record that the Trial Plan was mailed to Potoczny's "notice address." Nevertheless, because Potoczny himself read and signed the document in which he agreed that any earlier escrow waiver had been revoked, the Court finds that he received written notice of the revocation.

In addition, attached to Potoczny's complaint was a letter from ALS stating that terms of the Home Modification Program "require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required escrow items."  Compl., Ex. I.  The letter further explains that "[t]he

29

attached Escrow Account Statement reflects a new monthly payment
based on your current contractual Principal and Interest Payment
and the amount required monthly for your monthly escrow
deposit." Id.

      The attached Escrow Account Statement, dated November
10, 2009, sets forth the escrow payment calculation, and states
that, based on Potoczny's then-current monthly payments of
$716.41 principal and interest, his new monthly total payment
including escrow would be $1,416.19.  Compl., Ex. J.  Together,
these documents are sufficient to inform Potoczny that any prior
escrow waiver was no longer in effect.[21]

---

[21]  In his breach of contract claim, Potoczny alleges that
LendingTree waived his escrow obligation in November 2006, that
Aurora nonetheless began to demand escrow payments in November
2009, but that his "request to participate in the Home
Affordable Modification Program, however, was denied."  Compl.
¶¶ 49-51.  In his motion for summary judgment, he then argues
that "[i]n November 2009, Aurora began to demand that Plaintiff
pay it escrow funds . . . despite the fact that Plaintiff's
request to modify his loan under the Home Affordable
Modification Program was denied, to the extent it might have
been relevant."  Pl's Mem. in Supp. of Mot. Summ. J. at 14 (Doc.
No. 21-13).

    Not until his response to the defendants' cross-motions
does Potoczny belatedly argue that, even if the Trial Plan is
binding and revokes his escrow waiver, the monthly payment
called for in the Trial Plan, including escrow items, is
$837.27, not the $1,416.19 that Potoczny asserts he was later
required to pay.  Pl's Am. Reply at 3 (Doc. No. 39-3).  These
allegations and arguments, however, were raised in neither the
Complaint nor the plaintiff's own motion for summary judgment.

Accordingly, summary judgment is granted in favor of the defendants on all of Potoczny's claims under the FDCPA.

B.  <u>FCEUA & UTPCPL Claims</u>

In Count II of his Complaint, Potoczny asserts claims against the Aurora defendants under Pennsylvania's FCEUA. First, he argues that Aurora violated 73 P.S. § 2270.4(a), because any violation of the FDCPA by a debt collector constitutes an unfair or deceptive debt collection act or practice under the FCEUA.  Second, to the extent that Aurora is considered a creditor rather than a debt collector, Potoczny argues that Aurora violated FCEUA § 2270.4(b)(5), by using

---

Moreover, it is not clear from the record before the Court whether Aurora actually sought to collect escrow payments after Potoczny's application for loan modification was denied.  Aurora states that after April 2009, Potoczny returned to making payments of only principal and interest, rather than principal, interest, and escrows.  Placente Decl. ¶ 20.  Potoczny testified that, to the contrary, his monthly payments increased to $1,416.19, forcing him into default.  Potoczny Dep. 77, 82, 105; Pl's Am. Reply at 3.  The March 31, 2012 Customer Account Activity Statement reflects that Potoczny made monthly payments of approximately $837.37 from October 5, 2009, to April 30, 2009.  From June 1, 2010, until his last payment on December 6, 2010, he made monthly payments of approximately $717.00. According to the Statement, however, a payment of $1,416.19 was due on June 1, 2010.  Placente Decl., Ex. G at 1.

Even assuming that Aurora eventually sought to collect the amount stated in the November 2009 Escrow Account Statement rather than the amount stated in the Trial Plan, the record confirms that Aurora revoked Potoczny's escrow waiver, and was entitled to collect escrow payments under the terms of the Mortgage.

false, deceptive, or misleading representations or means in connection with the collection of a debt; § 2270.4(b)(5)(ii), by falsely representing the character, amount or legal status of a debt; § 2270.4(b)(5)(x), by using false or deceptive means to attempt to collect a debt; and § 2270.4(b)(6)(1), by attempting to collect an amount not expressly authorized by any agreement creating the debt or permitted by law.

For the reasons explained above in connection with the plaintiff's FDCPA claims, summary judgment is granted in the defendants' favor on the FCEUA claims.

Finally, because Potoczny's FDCPA and FCEUA claims are dismissed, his remaining claims under Pennsylvania's UTPCPL, which are derivative of the FCEUA claims, are also dismissed.

IV.   Conclusion

For the reasons set forth in this memorandum, the plaintiff's motion for summary judgment is denied, and the defendants' cross-motions for summary judgment are granted.

An appropriate Order shall issue.